Alleging the amputation of the last two fingers of his left hand and other injuries which prevented him from continuing to do work as a manual laborer, all as a result of injuries while in the employ of the defendant, plaintiff sued for a maximum of four hundred weeks compensation.
The answer admitted the employment at the wages stipulated, but set forth that plaintiff was employed solely to carry lumber from the edger table to a place on the yard where it could be stacked and that at the time of the injury, he was engaged in cleaning the debris from underneath this edger and was without the scope of his employment; that the injury could not have accidentally happened as alleged and concluded with the allegation that defendant believed plaintiff's injuries to be self-inflicted for the purpose of claiming compensation *Page 244 
and that the allegation that his injuries resulted in any loss of function of the left hand was "pure fabrication."
The District Judge found that plaintiff was injured while in the course of his employment with defendant and had lost two phalanges of his little and ring fingers and gave judgment under Article 4398 of Dart's General Statutes, Act No. 20 of 1914, § 8, as amended, for twenty weeks for each finger, or total of forty weeks compensation. From that judgment defendant has appealed.
Defendant's contention that plaintiff deliberately injured himself and that the injury occurred while he was not acting within the scope of his employment is not borne out by the testimony.
Plaintiff was injured while using a shovel in cleaning under the edger at a time when the sawing operations of the mill were temporarily closed. Defendant himself testified that plaintiff was employed on that day to "tail the edger," that is, to catch lumber from the saw and place it in the stack as directed. On the day of the accident, Mr. Smith, the operator of the mill, was short one of the workmen who normally assisted in putting the logs on the skidway and rolling them down. Defendant himself was operating the sawing carriage and when the supply of logs ran out, he stopped the sawing operation, and, according to the testimony of plaintiff, his father, and two brothers who constituted four of the eight or nine man crew working at the mill, defendant gave the order for some of the crew to help get in logs and the rest to clean up. Plaintiff's father testified that it was part of the job of the man who "tailed the edger" to clean up behind the edger, that is to remove the sawdust and stuff from underneath and that his son was so engaged with a shovel when he heard an unusual noise and they brought plaintiff out from underneath the edger with blood streaming from his hand and with his fingers missing. Plaintiff's brother Louis testified that when defendant stopped the carriage, he went with plaintiff to clean out from underneath the edger; that plaintiff carried the shovel usually used for that purpose.
Defendant testified that an employee by the name of Bloss Moore was running the edger and that it was his place, and not plaintiff's, to take care of all matters pertaining to the edger and that the orders were that clean up was to take place only when the machinery was stopped and that he had told his employees from time to time, "If you see anything go wrong, run, folks, run." Mr. Moore, when called, testified that it was his job to clean the sawdust and debris from beneath the edger, but when asked whether or not the plaintiff ever did that work, his reply was, "I don't know, sir."
The evidence showed that plaintiff had not worked long for defendant; that his employment prior to the day of the injury had been elsewhere than at the mill. Defendant offered no proof that plaintiff was instructed that it was not his duty to assist in the cleaning up operations underneath and near the equipment upon which he was working. Mr. Moore, the employee in charge of the edger, stated that it was his custom to clean up under the edger when the mill shut down at noon or at other times when operation stopped. The business of cleaning up under the edger was a sort of menial task connected with his own employment. It is not illogical to assume that plaintiff as a "freshman" employee should have been expected to assist in the clean up operation.
The testimony shows that the total crew operating the mill was less than ten men. The record does not show a clear division of the duties of the several employees. In fact, at the time of the injury, the mill was shut down so that some of those engaged in other duties could assist in putting more logs on the skidway and available for the carriage. The cases cited by defendant where recovery was denied to an employee on the theory that he was injured after leaving his assigned work and unnecessarily exposing himself to dangerous machinery are distinguishable from the present case in that here the plaintiff's employment was at the edger table and his engaging in the clean up operation during a lull in the sawing was not a leaving of his place of duty and an unnecessary exposure to danger. *Page 245 
Defendant introduced four witnesses for the purpose of showing that the plaintiff could not accidentally have injured himself as alleged. Their testimony is of little value. The first of these when asked by counsel for defendant whether the accident could have happened in the way plaintiff alleged, answered, "I just wouldn't know." The second when asked whether he had heard plaintiff testify and whether plaintiff could have accidentally injured his hand as he said, answered, "Yes, sir, I believe it could be done accidentally," and added, "I believe the way he say it happened that it could be done. The shovel hitting the strip and then the strip kicked that shovel in there. I believe it could be done that way." The third witness when asked by defense counsel whether plaintiff could have been injured in the way he said he was injured, answered, "I couldn't say. I never have and I have worked there since 1917." The fourth witness when asked whether plaintiff could have gotten accidentally injured as he stated, answered, "I couldn't say." No other testimony was introduced by defendant and his defense that plaintiff wilfully injured himself clearly falls.
Plaintiff in brief has asked that judgment be rendered for four hundred weeks compensation. However, plaintiff neither appealed nor answered the appeal and it is unnecessary for us to consider the authorities cited in brief on this point.
The judgment is affirmed, with costs.